# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

----------------------------------------------------------

SHIVA STEIN,                  :

                           :

       Plaintiff,        :    Civil Action No. _____

                           :

v.                           :

                           :    **COMPLAINT FOR VIOLATIONS OF**

CAMBREX CORPORATION, GREGORY B.  :    **SECTIONS 14(a) AND 20(a) OF THE**

BROWN, M.D., CLAES GLASSELL, LOUIS  :    **SECURITIES EXCHANGE ACT OF**

J. GRABOWSKY, BERNHARD HAMPL,   :    **1934**

KATHRYN RUDIE HARRIGAN PH.D.,    :

ILAN KAUFTHAL, STEVEN M. KLOSK,   :    **JURY TRIAL DEMANDED**

SHLOMO YANAI,             :

                           :

       Defendants.      :

----------------------------------------------------------  :

       Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

       1.     This is an action brought by Plaintiff against Cambrex Entertainment Corporation ("Cambrex or the "Company"), and the members Cambrex's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Cambrex and companies controlled by Permira Advisers LLC ("Permira"), a global investment firm.

       2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy

Statement") to be filed on September 6, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Catalog Merger Sub Inc. ("Merger Sub") will merge with and into the Company, resulting with the Company surviving the merger and becoming a wholly owned direct subsidiary of Catalog (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Cambrex common share issued and outstanding will be converted into the right to receive $60.00 per share in cash (the "Merger Consideration"). Catalog and Cambrex shareholders will hold approximately 51% and 49% of the combined company's outstanding shares, respectively.

3.     As discussed below, Defendants have asked Cambrex's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.   The financial projections were also utilized by the financial advisor of the Company, Morgan Stanley & Co. LLC ("Morgan Stanley") in conducting the valuation analyses in support of the fairness opinion. The Proxy Statement also omitted material information with respect with its analyses performed to reach the fairness opinions from each financial advisor and information with respect to the sales process.

4.     It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cambrex's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company is headquartered in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of Cambrex common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Gregory B. Brown M.D. has served as a member of the Board since 2017.

11.     Individual Defendant Claes Glassel has served as a member of the Board since 2016.

12.     Individual Defendant Louis J. Grabowsky has served as a member of the Board since 2015.

13.     Individual Defendant Bernhard Hampl has served as a member of the Board since 2016.

14.     Individual Defendant Kathryn Rudie Harringan Ph.D. has served as a member of the Board since 1994.

15.     Individual Defendant Ilan Kaufthal has served as a member of the Board since 1983.

16.     Individual Defendant Stseven M. Klosk has served as the Company's President, chief Executive Officer, and a member of the Board since 2008.

17.     Individual Defendant Shlomo Yanai has served as a member of the Board since 2012 and is the Non-Executive Chairperson of the Board.

18.     Defendant Cambrex is incorporated in Delaware and maintains its principal offices at One Meadowlands Plaza East Rutherford, New Jersey 07073.  The Company's common stock trades on the New York Stock Exchange under the symbol "CBM."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.      **The Proposed Transaction**

21.      Cambrex, a life sciences company, provides various products and services for the development and commercialization of new and generic therapeutics worldwide. Its products comprise active pharmaceutical ingredients and pharmaceutical intermediates that are used in the production of prescription and over-the-counter drug products, as well as finished dosage forms. The company serves generic drug companies; and companies that discover and commercialize small molecule human therapeutics. The company sells its products directly, as well as through independent agents. Cambrex Corporation was founded in 1981 and is headquartered in East Rutherford, New Jersey.

22.      On August 7, 2019, the Company and Catalog jointly announced the Proposed Transaction:

> EAST RUTHERFORD, N.J., Aug. 07, 2019 (GLOBE NEWSWIRE) — Cambrex Corporation (NYSE: CBM), the leading small molecule company providing drug substance, drug product and analytical services across the entire drug lifecycle, announced today that it has signed a definitive agreement to be acquired by an affiliate of the Permira funds in a transaction valued at approximately $2.4 billion, including Cambrex's net debt. Under the terms of the merger agreement, Cambrex shareholders will receive $60.00 in cash for each share of Cambrex common stock, which represents a 47.1% premium to the August 6 closing stock price and a 37.3% premium to the 60-day volume weighted average closing price leading up to this announcement.
>
> Cambrex has grown to become the premier contract development and manufacturing organization in the small molecule space over the last several years. The recent acquisitions of Halo Pharma in 2018 and Avista Pharma Solutions in 2019 added drug product manufacturing and a full range of early stage and analytical testing services to the company's leading position in drug substance manufacturing, allowing Cambrex to broaden customer relationships over the full product lifecycle, from pre-clinical through commercial.

* * *

Completion of the transaction is subject to customary closing conditions, including receipt of approval by Cambrex's shareholders and customary regulatory approvals. Closing is expected to occur during the fourth quarter of 2019.

The transaction will be financed through a combination of debt and equity financing.

Under the terms of the agreement, Cambrex may actively solicit acquisition proposals from third parties during a 45-day "go-shop" period starting from the date of the agreement (which period may be extended under certain circumstances for an additional 15 days), and subject to customary requirements included in the agreement, enter into or recommend a transaction with a person or group that makes a superior proposal. There can be no assurance that this process will result in a superior proposal. Cambrex does not intend to disclose developments during this process unless and until the Board makes a decision with respect to any superior proposal it may receive.

Morgan Stanley & Co. LLC is acting as exclusive financial advisor and Kirkland & Ellis, LLP is serving as legal advisor to Cambrex. RBC Capital Markets is acting as exclusive financial advisor and provided committed debt financing to the Permira funds and Skadden, Arps, Slate, Meagher & Flom, LLP is serving as legal advisor to the Permira funds.

23.     The Board has unanimously agreed to Proposed Transaction.  It is therefore imperative that Cambrex's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     <u>The Materially Incomplete and Misleading Proxy Statement</u>**

24.     On September 6, 2019, Cambrex filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement

before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

25.     With respect to the financial projections disclosed in the Proxy Statement, the Proxy Statement fails to provide material information.

26.     For the Company *Case A Projections* and *Case B Projections* (the "Projections"), the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Adjusted EBITDA and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 42. Information about Catalog's prospective financial information is material since Cambrex stockholders will own 49% of the combined company.

27.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29.     Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy Statement not misleading.

30.     With respect to Morgan Stanley's *Precedent Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed by Morgan Stanley in the analysis; and (ii) the premiums paid in the transactions observed by Morgan Stanley in the analysis. Proxy Statement at 49.

31.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose (i) line items used to calculate the unlevered free cash flows; (ii) the basis of choosing a range of perpetual growth rate of 2.0% to 2.5%; (iii) the basis of choosing a range of discount rates from 7.5% to 8.4%. Proxy Statement at 49-50.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32.     With respect to the *Background of the Merger*, the Proxy Statement fails to disclose whether the Company entered into any confidentiality with Permira and other potential bidders, and if they contained "don't-ask-don't-waive" provisions in any standstill provisions.

33.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

36.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the

financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

39.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff

be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of Cambrex within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Cambrex, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Cambrex, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Cambrex, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at

issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: September 18, 2019

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:   */s/ Gloria Kui Melwani*
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*